**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Kevin S. Brotspies, Esq.
Michael R. Morano, Esq. (*pro hac vice* admission to be sought)
225 Liberty Street, 36th Floor
New York, New York 10281
(212) 483-9490
*Attorneys for Plaintiff,*
*United States Fire Insurance Company*

### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>STEELTEC CONSTRUCTORS, LLC, GRANITE INDUSTRIES, LLC, MCCLINTOCK HOMES, LLC, MICHAEL G. TODD as trustee of the TODD LIVING TRUST, and MICHAEL G. TODD,<br><br>Defendants. | Civil Action No. 1:20-cv-4514<br><br>**COMPLAINT** |

Plaintiff, United States Fire Insurance Company ("U.S. Fire"), by way of Complaint against Defendants, SteelTec Constructors, LLC, Granite Industries, LLC, McClintock Homes, LLC, Todd Living Trust, and Michael G. Todd (collectively, "Indemnitors"), alleges as follows:

### JURISDICTION AND VENUE

1. Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Personal jurisdiction is conferred upon this Court pursuant to the provision recited in the below-referenced contract (referred to below as the "Indemnity

Agreement"), pursuant to which the Indemnitors, among other things, submit themselves to the jurisdiction of the federal courts situated in New York and the Indemnitors have waived any defenses regarding lack of personal jurisdiction.

3. Venue is proper in this Court pursuant to the venue provision recited in the "Indemnity Agreement" (defined below), which provides, among other things, that the Indemnitors submit themselves to the jurisdiction of the federal courts situated in New York and they have waived arguments relating to venue.

## THE PARTIES

4. United States Fire Insurance Company ("U.S. Fire") is a corporation organized and existing by virtue of the laws of the State of Delaware with a principal place of business at 305 Madison Avenue, Morristown, New Jersey.

5. Upon information and belief, SteelTec Builders, LLC ("SteelTec") is a corporation organized and existing by virtue of the laws of the State of Texas, having its principal place of business at 900 Utility Road, Sanger, Texas 76266.

6. Upon information and belief, Defendant, Michael G. Todd ("Mr. Todd"), is the sole member of SteelTec and he is an individual residing at 41 Beacon Bay Newport Beach, CA 92660.

7. Upon information and belief, Granite Industries, LLC ("Granite") is a corporation organized and existing by virtue of the laws of the State of Texas, having its principal place of business at 900 Utility Road, Sanger, Texas 76266.

8. Upon information and belief, the members of Granite are Defendant, Michael G. Todd, and non-party, Jennifer B. Todd.

9. Upon information and belief, non-party, Jennifer B. Todd, is an individual residing at 41 Beacon Bay Newport Beach, CA 92660.

10. Upon information and belief, McClintock Homes, LLC ("McClintock") is a corporation organized and existing by virtue of the laws of the State of Texas, having its principal place of business at 900 Utility Road, Sanger, Texas 76266.

11. Upon information and belief, the sole member of McClintock is Defendant, Mr. Todd.

12. Upon information and belief, Mr. Todd is the trustee of Todd Living Trust ("Trust").

## GENERAL ALLEGATIONS

### I. THE INDEMNITY AGREEMENT

13. SteelTec was at all relevant times engaged in the construction contracting business in connection with public and/or private construction projects.

14. In connection with certain of its construction contracts, SteelTec was required to provide surety bonds.

15. On or about June 1, 2018, in consideration for and in order to induce U.S. Fire, as surety, to issue certain bonds on behalf of SteelTec, as principal, the Indemnitors executed and delivered a General Indemnity Agreement (the "Indemnity Agreement") in favor of U.S. Fire, as indemnitee.

16. A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

17. Pursuant to the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to:

> exonerate, defend, indemnify and hold harmless [U.S. Fire] from and against any and all Loss, irrespective of whether [U.S. Fire] has made any payment under any of its Bonds or whether the Indemnitors may have assumed, or offered to assume, the defense of [U.S. Fire] upon any claim. [U.S. Fire] shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed . . . . An itemized, sworn statement of Loss by an employee of [U.S. Fire], or other evidence of payment, shall be *prima facie* evidence of the propriety, amount and existence of the Indemnitors' liability. Indemnitors shall pay to [U.S. Fire] interest on all disbursements made by [U.S. Fire] at the maximum rate permitted by law . . . .

Indemnity Agreement (Ex. A) at ¶ 5.

18. The Indemnity Agreement further provides that:

> [i]mmediately upon demand by [U.S. Fire], the Indemnitors shall deposit with [U.S. Fire] a sum of money, as collateral security, in an amount [U.S. Fire], in its sole and absolute discretion, deems necessary at the time of said demand to protect [U.S. Fire] from actual or anticipated Loss. Demand may be made as soon as: (i) the assertion of any Claim against [U.S. Fire]; or (ii) [U.S. Fire] determines that liability exists under any Bond; or (iii) [U.S. Fire] has a reasonable basis to believe that it may incur or sustain liability or Loss;   . . . ; or (v) [U.S. Fire] deems itself insecure, whether or not [U.S. Fire] has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any Claim in whole or in part. . . .

Indemnity Agreement (Ex. A) at ¶ 7.

19. The Indemnity Agreement defines the term "Loss" as follows:

> all *demands, liabilities, losses, costs, damages and expenses of any kind or nature, including legal fees and expenses . . . and/or other professional fees and expenses*, . . . which [U.S. Fire] incurs, or to which it may be exposed, in connection with any Bond or this [Indemnity] Agreement, including but not limited to all loss and expense incurred by reason of: (i) [U.S. Fire]'s having executed any Bond or any other

>instrument or any Modification thereof; (ii) any investigation by [U.S. Fire] in connection with any Bond or Contract; . . . ; (iv) [U.S. Fire]'s obtaining or attempting to obtain the release of any Bond; (v) [U.S. Fire]'s recovering or attempting to recover Property . . . in connection with any Bond or this Agreement; (vi) Indemnitors' failure to perform or comply with any promise, covenant, or condition of this Agreement; . . . ; and (viii) all interest accruing thereon at the maximum legal rate. *Loss* shall also include any and all amounts sufficient to discharge any Claim made against [U.S. Fire] on any Bond and shall further include any premiums due on any Bond issued by [U.S. Fire] on behalf of the Principal.

Indemnity Agreement (Ex. A) at ¶ 2 (emphasis added).

20. The Indemnity Agreement defines the term "Default" as follows:

>the occurrence of any one or more of the following: . . . (ii) any demand by an Obligee, other Bond beneficiary and/or payment bond claimant against a Bond; . . . (iv) a breach of any provision of this [Indemnity] Agreement; (v) failure to make payment of a properly due and owing bill or debt in connection with any Contract and/or this Agreement; . . . (viii) failure to provide timely financial information; . . . (x) failure to pay premium . . . .

Indemnity Agreement (Ex. A) at ¶ 2.

21. The Indemnity Agreement defines the term Claim as follows: "any claim, notice of default, notice of termination, demand for payment, demand for meeting, action, proceeding, suit, judgment, or any form of notice, claim or demand received by [U.S. Fire] in connection with any Bond or Contract." Indemnity Agreement (Ex. A) at ¶ 2.

## II. THE CONTRACT, THE PROJECT AND THE BONDS

22. Following the Indemnitors' execution of the Indemnity Agreement, SteelTec entered into a contract (the "Contract") with Rocky Crest Enterprises, LLC ("Rocky Crest") whereby SteelTec agreed to furnish certain labor, equipment and/or

materials, in connection with a private construction project ("Project") generally referred to as "Rocky Crest Transportation Facility".

23. In connection with the Contract, U.S. Fire, as surety, issued and/or executed a performance bond bearing bond number 602-117723-7 and in the penal sum amount of $1,875,000.00, on behalf of SteelTec, as principal, and in favor of Rocky Crest ("Performance Bond").

24. In connection with the Contract, U.S. Fire, as surety, issued and/or executed a payment bond bearing bond number 602-117723-7 and in the penal sum amount of $1,875,000.00, on behalf of SteelTec, as principal ("Payment Bond").

25. The Performance Bond and the Payment Bond shall be collectively referred to as the "Bonds."

26. In connection with the Contract and the Performance Bond and/or the Payment Bond, a Multiple Obligee Rider was issued and/or executed whereby, among other things, Wells Fargo SBA Lending was named as an additional obligee ("Rider")

27. The Bonds and the Rider are attached hereto as composite **Exhibit B**.

### III. CLAIMS AND/OR DEMANDS RELATING TO THE BONDS AND THE INDEMNITY AGREEMENT

28. Following issuance and/or execution of the Bonds, Rocky Crest alleged that SteelTec defaulted under the Contract.

29. Following issuance and/or execution of the Bonds, Rocky Crest made demand(s) of U.S. Fire in connection with the Contract and the Bonds, including a demand under the Performance Bond ("Performance Demand").

30. In connection with the Performance Demand, by email and letter dated September 11, 2019, Rocky Crest demanded, among other things, that U.S. Fire "step[ ]

in and perform[ ] and complete[ ] the [P]roject." A copy of the subject email and letter are enclosed as composite **Exhibit C.**

31. Following issuance and/or execution of the Bonds, subcontractors, suppliers and sub-subcontractors of SteelTec asserted demands for payment, claims and/or liens in relation to the Contract and the Project (collectively, "Claims").

32. By letter from U.S. Fire to the Indemnitors dated November 11, 2019, U.S. Fire ("November 2019 Letter"), among other things, demanded that the Indemnitors: (a) make payment to U.S. Fire in the amount of $34,817.00, as indemnification for certain losses, costs and/or expenses incurred by U.S. Fire ("November Indemnity Demand"); and (b) deposit with U.S. Fire the sum of $702,180.76, as collateral security in favor of U.S. Fire in connection with, among other things, the Bonds ("November Collateral Demand").

33. A true and accurate copy of the November 2019 Letter, without exhibit thereto, is attached hereto as **Exhibit D**.

34. Despite their joint and several obligations under the Indemnity Agreement, to date, the Indemnitors have failed and/or refused to comply with the November Indemnity Demand.

35. Despite their joint and several obligations under the Indemnity Agreement, to date, the Indemnitors have failed and/or refused to comply with the November Collateral Demand.

36. By letter from U.S. Fire to the Indemnitors dated April 30, 2020, U.S. Fire, among other things, demanded that the Indemnitors: (a) indemnify, hold harmless and otherwise reimburse U.S. Fire in connection with, among other things, certain losses,

costs and/or expenses, by way of making payment to U.S. Fire in the amount of $739,479.12; and (b) otherwise indemnify and hold harmless U.S. Fire in connection with any and all default and/or loss and without limitation any and all losses, costs and/or expenses incurred or to be incurred by U.S. Fire in relation to this matter ("April Demand", a copy of which, without exhibits thereto, is attached hereto as **Exhibit E**).

37. Despite their joint and several obligations under the Indemnity Agreement, to date, the Indemnitors have failed and/or refused to comply with, among other things, the April Demand.

38. As of June 8, 2020, U.S. Fire has incurred losses, costs and/or expenses, including, but not limited to, attorneys' fees, in the amount of no less than $853,858.62, in connection with, among other things, the Bonds, enforcing the terms of the Indemnity Agreement, the Performance Demand, and, without limitation, the Claims ("Current Loss").

39. Despite their joint and several obligation to do so, the Indemnitors have failed and/or refused to indemnify and hold harmless U.S. Fire in connection with, among other things, the Current Loss.

40. U.S. Fire has incurred and will continue to incur losses, costs and/or expenses, including attorneys' fees, in connection with the Bonds and the enforcement of the Indemnity Agreement, among other things.

41. Despite due demand, the Indemnitors have failed and/or refused to honor their obligations under the Indemnity Agreement by, among other things, failing and/or refusing to reimburse U.S. Fire for the Current Loss and any and all other "Loss" (as

defined by the Indemnity Agreement) in connection with the Bonds and/or the Indemnity Agreement.

42. In addition, SteelTec has failed and/or refused to honor its common law obligations to U.S. Fire by, among other things, failing and/or refusing to indemnify U.S. Fire in connection with the losses, costs and/or expenses incurred by U.S. Fire in relation to the Bonds.

### FIRST CAUSE OF ACTION

### CONTRACTUAL INDEMNIFICATION AGAINST THE INDEMNITORS

43. U.S. Fire repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

44. Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed to indemnify and save harmless U.S. Fire from any and all "demands, liabilities, losses, costs, damages and expenses of any kind or nature, including legal fees and expenses."

45. The Indemnitors have failed to honor their obligations under the Indemnity Agreement to, among other things, indemnify and reimburse U.S. Fire for the losses, costs, and expenses it has incurred (including the Current Loss) or may incur as a result of, among other things, having issued bonds on behalf of SteelTec, including the Bonds, and/or the Indemnitors' failure to comply with the Indemnity Agreement.

46. As a result of the Indemnitors' breach of and/or default under the Indemnity Agreement, U.S. Fire has incurred unreimbursed losses, costs, and expenses, including attorneys' fees, and may continue to sustain losses, costs, and/or expenses, including attorneys' fees.

**WHEREFORE**, U.S. Fire respectfully demands that judgment be entered against the Indemnitors, jointly and severally:

(a) for contractual indemnification for all loss, cost and expense, including attorneys' fees incurred by U.S. Fire as of the date hereof, and any and all liability, loss, cost, expense and attorneys' fees to be incurred by U.S. Fire, together with appropriate interest thereon;

(b) for declaratory relief, declaring the Indemnitors jointly and severally liable to U.S. Fire under the Indemnity Agreement for all loss, liability, cost or expense, including attorneys' fees, which U.S. Fire has incurred and will incur;

(c) for attorneys' fees and costs of suit; and

(d) for such other and further relief, legal or otherwise that this Court may deem just and proper.

## SECOND CAUSE OF ACTION

### SUBROGATION
### AGAINST STEELTEC

47. U.S. Fire repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

48. To the extent that U.S. Fire has made, or will make, payments to extinguish SteelTec's debts arising from either or both of the Bonds, U.S. Fire has, and/or will, become subrogated to the rights of, among others, those whom it has paid, or will pay, in connection with either or both of the Bonds.

49. As a result of SteelTec's failure to honor its obligations under the Bonds, U.S. Fire has sustained damages and/or is likely to sustain damages.

**WHEREFORE**, U.S. Fire demands judgment against SteelTec:

(a) for subrogation in an amount equal to any and all payments made by U.S. Fire in connection with any bond issued by U.S. Fire to SteelTec, including the Bonds;

(b) for attorneys' fees and costs of suit; and

(c) for such other and further relief, legal or otherwise that this Court may deem just and proper.

### THIRD CAUSE OF ACTION

### COMMON LAW INDEMNIFICATION AGAINST STEELTEC

50. U.S. Fire repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

51. As between U.S. Fire and SteelTec, U.S. Fire is secondarily obligated under the Bonds, while SteelTec is primarily obligated under the Bonds, and otherwise owes a duty to U.S. Fire to procure the discharge of all obligations arising under the Bonds.

52. U.S. Fire has sustained and/or will sustain damages by reason of SteelTec's failure to honor its common law indemnification obligations arising under the Bonds.

**WHEREFORE**, U.S. Fire respectfully demands judgment against SteelTec as follows:

(a) for common law indemnification for all losses, costs, expenses, and attorneys' fees incurred by U.S. Fire, and any and all liability, loss, cost, expense, and attorneys' fees to be incurred by U.S. Fire, in connection with U.S. Fire's issuance and/or execution of the Performance Bond and the Payment Bond, together with appropriate interest thereon;

(b) for attorneys' fees and costs of suit; and

(c) awarding U.S. Fire such other and further relief as the court deems just, equitable and proper.

Dated:  June 12, 2020

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Plaintiff,
United States Fire Insurance Company

By: /s/ Kevin S. Brotspies
Kevin S. Brotspies, Esq.
Michael R. Morano, Esq. (*pro hac vice* admission to be sought)
225 Liberty Street, 36th Floor
New York, New York 10281
(212) 483-9490